UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO: 8:26-mj-1940-NHA

JAMES STREZOVSKI

_____/

## ORDER OF RELEASE

At an initial hearing on April 29, 2026, the United States moved to detain the Defendant, and the Defendant moved for conditions of release. Docs. 7, 8. I found that the United States failed to demonstrate by clear and convincing evidence that no conditions of release could reasonably ensure the safety of the community, or by a preponderance of evidence that no conditions of release could reasonably ensure the Defendant's future appearance in Court. I thus granted the Defendant's motion for release, but, at the United States' request, I stayed my order of release pending the United States' appeal of my release order to the District Court.

## BACKGROUND

On March 16, 2026, a grand jury sitting in the Northern District of Indiana returned an indictment charging the Defendant and twenty-one others

with numerous crimes relating to the alleged operation of a multi-state illegal sports-gambling operation known to federal authorities as the Gerodemos Gambling Operation. The indictment alleges that the Operation, based in Lake County, Indiana and led by Defendants James Geredemos and Dean Gialamas, involved offering illegal online gambling services to individuals in several states, extending lines of credit to bettors, and collecting or attempting to collect debts through extortion and threats of violence, between 2021 and 2026.

Among the twenty-eight charges brought in the indictment, six name Defendant Strezovski: operating an illegal gambling business in violation of 18 U.S.C. § 1955; conspiring to commit, and committing, extortion in violation of 18 U.S.C. § 1951(a); collecting, and conspiring to collect, extensions of credit by extortion in violation of 18 U.S.C. § 894; and transmitting wagering information by wire communication in violation of 18 U.S.C. § 1084(a).

The Defendant is 57 years old. Pretrial Services Report ("PTSR") p. 2. He has never before been arrested for or charged with a crime. PTSR p. 4.

The Defendant has lived in Valparaiso, Indiana for thirty-six years. *Id.,* p. 2. He has been married for twenty-six years, and the couple has three adult children who live in Florida and Indiana. *Id.* p. 3; Hearing Rec. at 40:30. The Defendant is self-employed, owning and renting vacation homes. PTSR p. 3. *Id.* The Defendant has assets exceeding $400,000 in value. *Id.*

The Defendant admits to having a gambling addiction, but expressed an interest in treatment to Pretrial Services. PTSR p. 4. The Defendant occasionally drinks alcohol, but has no history of substance abuse and no mental health conditions, aside from the gambling addiction and a "lack of healthy coping skills." *Id.*

On April 29, 2026, following the unsealing of the indictment in this case, the Defendant was arrested in the Middle District of Florida, where he and his wife were vacationing (at a property they own in Sarasota). Hearing Rec. at 25:40. The Court held a hearing pursuant to Rule 5(c) of the Federal Rules of Criminal Procedure the same day.

Prior to the hearing, Pretrial Services interviewed the Defendant and provided to the Court a bail report recommending his release on an unsecured bond. PTSR p. 5. Pretrial Services recommended that the Defendant be required to report to Pretrial Services in the Northern District of Indiana, to surrender his passport to the Clerk of Court in that district, and to participate in mental health treatment as directed by Pretrial Services. *Id.*

At the hearing, the parties made oral cross-motions for detention and release. Concluding that Hobbs Act extortion qualified as a crime of violence, I held a detention hearing as required by 18 U.S.C. § 3142(f).

The United States argued that the Defendant was both a danger to the community and a flight risk. The United States emphasized that the

Defendant's alleged conduct included extortion, a violent crime, and that the Defendant allegedly worked closely with the leader of the criminal organization. Hearing Rec. at 20:24. The United States pointed out that the weight of the evidence against Defendant was strong and included extensive text message conversations between the Defendant, co-conspirators, and victims. *Id.* at 21:27. The United States acknowledged that the Defendant had no documented criminal history, but expressed concern about his admitted gambling addiction, pointing out that the Defendant's as-yet untreated addiction had apparently already led to a life of violent crime. *Id.* at 22:59. Finally, the Untied States argued that, even if the Defendant surrendered his passport, he posed a risk of flight, because his financial resources and recent international travel suggested a capacity to flee the country by creative means. *Id.* at 23:06.

The Defendant sought release. His wife, Susana Strezovski, addressed the Court. *Id.* at 40:25. Mrs. Strezovski offered to co-sign a bond and to act as his third-party custodian. *Id.* at 41:05. She assured the court, "I know he wouldn't flee, I know he wouldn't do that . . . I've known him for thirty years, I know he's not like that at all. That's not the type of person he is at all. He's a softie, he loves his kids . . . there's no way he would be without his children," one of whom was soon to be married. *Id.* at 42:00. Mrs. Strezovski reaffirmed that she was "100%" willing to risk her own money to assure the Defendant's

4

future appearances. *Id.* at 42:45. Mrs. Strezovski presented as emotional, earnest, and forthcoming, and I found her credible. After the hearing, she signed a provision in the conditions-of-release order agreeing to serve as Defendant's custodian. Doc. 14 p. 2.

After considering the record and the parties' evidence and arguments, and weighing the factors in 18 U.S.C. § 3142(g), I announced my intention to grant the Defendant's motion for pre-trial release under strict conditions. *See* Hearing Rec. at 44:54-45:40.

Among other conditions, I required the Defendant to execute a $100,000 bail bond with a solvent surety, because many of the Defendant's and his wife's assets were subject to forfeiture. *See* Doc. 13. I required that the Defendant be placed on home detention in Indiana, that he submit to location monitoring, that he be placed in the custody of Mrs. Strezovski, that he surrender his passport to the Indiana court, and that he be evaluated and treated for gambling addiction as required by Pretrial Services. *See* Doc. 14.

## ANALYSIS

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act creates such exceptions. *See* 18 U.S.C. § 3142.

For some defendants, the Act creates a presumption that the defendant should be detained pending trial. *Id.* §§ 3142(e)(2), 3142(e)(3). In this case, the

Defendant faces no charges that carry a detention presumption. Nonetheless, when a judge holds a hearing on detention, the judge "shall order" that the defendant be detained, if the judge "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." *Id.* §§ 3142(e)(1). To prevail on a detention motion, the government must establish by a preponderance of the evidence that no conditions will reasonably assure the appearance of the defendant at trial, and it must show by clear and convincing evidence that no conditions will reasonably assure the safety of the community. *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

The Court examines certain enumerated factors in determining whether the Defendant's release poses a risk of danger or non-appearance. 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense, the weight of the evidence, the defendant's history and characteristics, and the danger the defendant poses to any person or the community. *Id.*

**Nature and Circumstances of the Offense.**

In weighing whether a defendant poses too great a danger or risk of flight to justify pretrial release, courts must consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). For the purposes of the Bail Reform Act, a "crime of violence" is defined as "an offense that has as an element of the offense the use,

6

attempted use, or threatened use of physical force against the person or property of another," or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(A)-(B).

Here, among Defendant's six charges, the most serious is extortion, in violation of 18 U.S.C. § 1951(a). The Defendant is charged with conspiring with others to extort, and extorting, money from "Victim 2" "by wrongful use of actual and threatened force, violence and fear." The Defendant is alleged to have engaged in these crimes over the course of two years – from August 2023 to June 2025. These charges do create a danger concern.

On the other hand, and without minimizing the seriousness of the *nature* of the charges for violent crimes the Defendant faces, their *circumstances* are slightly mitigating. The detailed indictment contains few allegations that the Defendant personally enacted violence or conveyed threats of violence. To be sure, the indictment alleges that the Defendant was the initial "bookie" managing Victim 2's wagers and debts, and that Victim 2 quickly incurred debts to the Gerodemos Gambling Operation. *See* Doc. 1 pp. 29-30. And, in September 2023, the Defendant is alleged to have texted James Geredemos (a leader of the Operation), "[I] may need to go fly down there [Florida] and have

7

a face-to-face. Maybe he [Victim 2] doesn't understand the conversation." Doc. 1 p. 30.

From there, however, Geredemos himself is alleged to have taken the leading role in extorting Victim 2. The indictment alleges that in November 2023, Geredemos texted the Defendant about collecting from Victim 2, sending several consecutive texts one day in which he directed the Defendant to contact Victim 2 more, and asked the Defendant to give him Victim 2's address. Doc. 1 p. 30. In response, the Defendant allegedly responded: "Yo[] bro wtf take it easy," and "I'm not gonna keep calling every every fucking two seconds." Doc. 1 p. 31.

The indictment alleges that, in the following months, Geredemos continued sending increasingly profane and violent texts to the Defendant about Victim 2, and directly to Victim 2. But as it depicts and escalation of the threats, the indictment mentions the Defendant himself less and less. *See* Doc. 1 pp. 31-34. By the time Geredemos and other Operation associates are alleged to have coordinated in-person threatening encounters with Victim 2 in 2024, the indictment mentions the Defendant only with passing references to phone calls between Geredemos and the Defendant. *See* Doc. 1 pp. 34-45. By contrast, numerous other Operation associates are alleged to have taken explicit steps to track down and intimidate Victim 2. *Id.*

The indictment certainly alleges that the Defendant awas an active participant in an extortion scheme. But, the indictment does not powerfully establish that the Defendant is particularly dangerous. Further, while the United States emphasized at the hearing that the government is in possession of texts showing coordination in the extortion scheme between the Defendant and Geredemos, it did not proffer any description of those texts beyond what is alleged in the indictment. *See* Hearing Rec. at 20:24.

Thus, the fact that the Defendant is charged with a crime of violence weighs against releasing him. But the indication that the Defendant was a relatively minor participant in the extortion scheme mitigates my dangerousness and flight concerns. I further find that close monitoring and a prohibition on contact with any co-defendant or victim significantly mitigates the Defendant's dangerousness and flight risk as it relates to the seriousness of the alleged crimes.

**The Weight of the Evidence.**

The evidence in this case appears strong. As stated, The Defendant's participation in the extortion scheme is documented in the detailed indictment with alleged texts and calls between the Defendant, Geredemos, and Victim 2 over a span of two years. The Defendant's other charges, for participating in the gambling operation itself, are similarly supported by proffered electronic communications. While the weight of the evidence is the least important factor,

it weighs in favor of detention. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) ("[T]he weight of the evidence is the least important of the various factors.").

**The History and Characteristics of the Defendant.**

Section 3142(g) further directs courts to consider, among other relevant aspects of a defendant's history and characteristics, his family situation, employment, ties to the community, mental condition, history of drug or alcohol abuse, criminal history, appearance record, supervision history.

Initially, I note that, while the United States and Pretrial Services noted a lack of strong financial and familial ties to the community, their analysis concerned the Defendant's ties to the Middle District of Florida, not to the Northern District of Indiana, where this case will proceed. Hearing Rec. at 24:30. To be sure, the Defendant would be expected to transport himself from Florida to his home state, were he to be released on conditions. This initial travel requirement informed my decision to impose a $100,00 bond, secured by a solvent surety, as a condition of the Defendant's release. But, the Defendant's ties to the community in which he faces charges—the Northern District of Indiana—are strong. He has lived in the same town in that district for over thirty years, and has shared a home with his wife in that district for over twenty years. Considering the Defendant's resources and propensity for international travel, the Defendant's risk of flight is not negligible. But it is

10

certainly mitigated by his lifelong, ongoing connections to the place where he lives and will be expected to face trial.

Crucially, the Defendant is 57 years old with no criminal history. Not an arrest. Not a conviction. This weighs heavily against a finding of dangerousness.

Additionally, neither the United States nor Pretrial Services noted any substance abuse history, further minimizing concerns of dangerousness or nonappearance.

Defendant's admitted gambling addiction does raise concerns. For this reason, I included a requirement in my release order that the Defendant get evaluated and treated for gambling addiction – treatment which the Defendant himself seeks.

The Defendant's community and family ties in the Northern District of Indiana weigh strongly in favor of his release, as does the absence of any criminal history whatsoever. The Defendant's admitted gambling addiction gives me some pause, but given the lack of a presumption in favor of detention, and given the specific gambling-related conditions of his release, this concern does not satisfy the Government's duty to demonstrate by a preponderance of evidence that no conditions can reasonably ensure the Defendant's future appearance in court.

**The Nature and Seriousness of Danger to Any Person or the Community.**

I acknowledge that the allegations include the Defendant's participation in a group that threatened violence to a member of the community. But, to the extent the present charges are the only basis for a finding that the Defendant poses a serious danger to the community or to any person, the Defendant's relatively peripheral involvement with the alleged violent conduct undermines the United States' case for dangerousness.

I do take seriously Mrs. Strezovski's heartfelt endorsements of her husband's good character, which accompanied her enthusiastic consent to serve as his custodian. True, the Defendant's wife is an interested party, and the nature and seriousness of any danger the Defendant poses is a determination for the Court, not for witnesses. Ultimately, however, I find that the relative lack of evidence of a specific, ongoing danger posed by the Defendant's release, combined with the persuasive character evidence offered by the Defendant, preclude a finding that the United States has presented clear and convincing evidence that the Court's proposed conditions of release would be insufficient to reasonably ensure the safety of the community.

After considering all evidence, the testimony and arguments, and the factors in 18 U.S.C. § 3142(g), I further find that the United States has failed

12

to demonstrate by a preponderance of the evidence that the conditions cannot reasonably ensure the Defendant's future appearance in court.

## CONCLUSION

After reviewing the record, listening to counsel's arguments, and hearing testimony, and for the reasons stated above and at the hearing, I find that the conditions of release entered by the Court (*see* Doc. 14) can reasonably ensure the Defendant's future appearance in Court and the safety of the community.

In light of the United States' objection to my order, I STAY the execution of this order pending the District Court's resolution of the United States' appeal, provided that the United States file its written appeal on or before May 4, 2026. If the United States does not timely appeal, the Defendant shall be returned to Court for release on May 5, 2026.

**DONE** and **ORDERED** in Tampa, Florida, on May 2, 2026.

NATALIE HIRT ADAMS
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
United States Pretrial Services
United States Marshals Service